UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**TRACY TODD,**

       **Plaintiff,**                        Case No. 2:05-cv-1076
                                               JUDGE GREGORY L. FROST
       **v.**                                Magistrate Judge Mark R. Abel

**CITY OF ZANESVILLE**
**POLICE DEPARTMENT, et al.,**

       **Defendants.**

## OPINION AND ORDER

This matter is before the Court for consideration of Defendants' Motion for Judgment on the Pleadings (Doc. # 8) and Plaintiff's combined memorandum in opposition/motion to strike (Doc. # 11). Also before the Court is Plaintiff's Motion for Summary Judgment/Motion to Strike Defendants' Answer to Plaintiff's Complaint (Doc. # 9) and Defendants' memorandum in opposition (Doc. # 15). For the reasons that follow, the Court **GRANTS IN PART** the motion for judgment on the pleadings, **DENIES** the majority of that motion, and **DENIES** the remaining motions.

### I.  Background

On November 23, 2003, Defendants arrested Plaintiff, Tracy Todd. During that arrest, Defendants struck Plaintiff in the brachial plexus area with batons and used a Taser on Plaintiff's neck/shoulder area three times. Plaintiff allegedly sustained injuries and sought medical care as a result of the police contact.

Plaintiff's subsequently initiated the instant action under 42 U.S.C. § 1983, alleging excessive force.  (Doc. # 3.)  Defendants Patrolman Moore, Sergeant Rice, Patrolman Barnhart, Detective Lenhart, Lieutenant Shaw, Patrolman Beck and Patrolman Phillips filed their Answer on December 28, 2005. (Doc. # 7.)  Defendants then moved for judgment on the pleadings on January 1, 2006.  (Doc. # 8.)  Plaintiff subsequently moved for summary judgment on January 23, 2006.  (Doc. # 9.)  The parties have completed briefing the issues involved, and their motions are now ripe for disposition.

## II.  Motion For Judgment on the Pleadings

Defendants move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), which provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  In considering such a motion, a court must "construe the complaint in the light most favorable to plaintiff, accept all of the complaint's factual allegations as true, and determine whether plaintiff undoubtedly can prove no set of facts in support of his claim[s] that would entitle him to relief."  *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 512 (6th Cir. 2001).  *See also Mixon v. State of Ohio*, 193 F.3d 389, 400 (6th Cir. 1999).  A court need not, however, accept as true legal conclusions or unwarranted factual inferences.  *Mixon*, 193 F.3d at 400.  Additionally, because Plaintiff is proceeding *pro se*, this Court shall liberally construe his filings and will not dismiss his complaint unless it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972) (citing *Conley v. Gibson*, 355 U.S. 41, 45-56 (1957)).

Guided by this standard, the Court shall proceed to address each of Defendants' arguments in turn. Before undertaking this analysis, however, the Court must address a threshold matter; Plaintiff's response to the Rule 12(c) motion includes a request for this Court to strike Defendants' motion "as containing misleading facts." (Doc. # 11.) The motion to strike is not well taken, however, for three reasons.

First, although Plaintiff does not specify any rule under which he proceeds, Defendants' Rule 12(c) motion is not susceptible to being stricken under Fed. R. Civ. P. 12(f) (if Plaintiff indeed intended to proceed under that rule). It is well settled that under Rule 12(f), "a court may strike only material that is contained in the pleadings," which does not include a motion for judgment on the pleadings. *See Fox v. Michigan State Police Dep't*, No. 04-2078, 2006 WL 456008, at *2 (6th Cir. Feb. 24, 2006) (declining to strike attachment to a Rule 12(b)(6)/Rule 56 motion because they were not part of the pleadings).

Second, aside from Rule 12(f), Plaintiff's request is based in part on a misinterpretation of Defendants' pleading admissions. (Doc. # 11, at 2.) Contrary to Plaintiff's contention, Defendants did not concede a constitutional violation in their Answer.

Third, to the extent that Plaintiff disagrees with the factual contentions or the legal consequences of the factual allegations underlying Defendants' Rule 12(c) motion, such an attack targets the ultimate success or failure of the motion and not the propriety of the filing of the motion. The remedy Plaintiff can seek, then, is a denial of the Rule 12(c) motion and not the striking of that document.

Accordingly, the Court **DENIES** Plaintiff's motion to strike Defendants' motion for judgment on the pleadings.  (Doc. # 11.)  Having dispensed with this preliminary matter, the Court shall now turn to the substantive issues involved in the Rule 12(c) motion.

**A. Statute of Limitations**

Defendants first argue in their motion for judgment on the pleadings that because Plaintiff's arrest occurred on November 23, 2003, the statute of limitations on his claim expired on November 23, 2005.  (Doc. # 8.)  Thus, Defendants contend, Plaintiff's Complaint falls outside the filing deadline.

As a threshold matter, this Court must first ascertain what cause of action Plaintiff presents in order to determine whether its corresponding statute of limitations has expired.  In his Complaint, Plaintiff asserts actions by Defendants that he contends were "in contravention of the 8th Amendment of the United States' [*sic*] Constitution."  (Doc. # 3, at 5.)  Thus, although Plaintiff did not explicitly identify 28 U.S.C. § 1983 in his pleading, the nature of his *pro se* Complaint suggests that he is proceeding under that statute.

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983.  Thus, in order to assert valid § 1983 claim, Plaintiff must show that, while acting under color of state law, Defendants deprived him of a right secured by the Federal

Constitution or laws of the United States.  *See Alkire v. Irving,* 330 F.3d 802, 813 (6th Cir. 2003).  To survive the motion for judgment on the pleadings, Plaintiff must have also brought his § 1983 claim within the applicable statute of limitations.

 Section 1983 does not specify a statute of limitations.  This omission means that Ohio's two-year statute of limitations applies.  *See Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855-56 (6th Cir. 2003) (two-year statute of limitations period found in Ohio Rev. Code § 2305.10 applies to § 1983 actions); *Browning v. Pendleton*,  869 F.2d 989, 991 (6th Cir. 1989) (stating that "when a state, like Ohio, has multiple statutes of limitation for personal injury actions, the appropriate state statute of limitations to borrow for claims brought under 42 U.S.C. § 1983 is the residual or general personal injury statute of limitations, not any statute of limitations for specific intentional tort." (citations omitted)).  This statute of limitations begins to run when "plaintiff[] knew or should have known of the injury which forms the basis of [his] claims." *Hodge v. City of Elyria*, 126 Fed. Appx. 222, 224 (6th Cir. 2005).

 In this instance, Plaintiff allegedly sought medical care the day following the arrest, and he knew of the injury at the time of the arrest. (Doc. # 3.)  For these reasons this Court concludes that Plaintiff's two-year statute of limitations began to run on the day of the arrest, which was November 23, 2003.  Defendants move for judgment on the grounds that Plaintiff did not file his Complaint until November 28, 2005–which Defendants misidentify as November 30–several days outside the two-year limitations period.

 Despite appearances, however, the Court concludes that Plaintiff filed his pleading before his statute of limitations expired.  The parties' dispute here appears to arise from confusion

regarding the date of filing of the Complaint.  Plaintiff, who is currently incarcerated, sent a motion for leave to proceed *in forma pauperis* in Case No. 1:05-cv-767 that the Clerk of Courts stamped as received on November 21, 2005.[1]  (Doc. # 1.)  According to a time-stamp on the document, Magistrate Judge Hogan filed his order granting the motion on November 28, 2005; a handwritten date next to the judicial officer's signature read "11/23/05." (Doc. # 2, at 3.) According to its time stamp, the Clerk of Court filed the motion to proceed *in forma pauperis* on November 28, 2005.  (Doc. # 1.)  Thus, the Court received Plaintiff's motion before the limitations period expired, but did not file it until after the limitations period would have run absent tolling.

Similarly, Plaintiff's Complaint is time-stamped as filed on  November 28, 2005, but, notably, it also bears a blurry "Received" stamp appearing to read November 21, 2005. (Doc. # 3, at 1.)  Because the magistrate judge's order was signed on November 23, 2005 (but filed on November 28, 2005), logic dictates that this Court read the Complaint's "Received" date as November 21, 2005.

This Court's review of the record thus reveals that the Clerk received Plaintiff's Complaint *concurrently* with his motion for leave to file *in forma pauperis* on November 21, 2005, which was before the expiration of the two-year statute of limitations.  This tolled the statute of limitations.

The United States Court of Appeals for the Sixth Appellate Circuit has explained:

---

[1] The case was later transferred to Columbus and assigned its current case number. (Doc. # 4.)

> When a petitioner files for permission to file IFP [*in forma pauperis*], a complaint is considered filed on the day the clerk's office receives both the complaint and the application to proceed IFP, even if the complaint is not formally stamped "filed" until a later date when the IFP application is granted.

*Scott v. Evans*, 116 Fed. Appx. 699, 701 (6th Cir. 2004) (citing *Dean v. Veterans Admin. Reg'l Office,* 943 F.2d 667, 671 (6th Cir.1991), vacated and remanded on other grounds, *Dean v. Veterans Admin. Reg'l. Office*, 503 U.S. 902 (1992)). Therefore, as another judge in this District has correctly reasoned, once a plaintiff moves to proceed *in forma pauperis*, the statute of limitations is tolled. *See Simmons v. Ohio Civil Service Emp. Assoc.*, 259 F. Supp. 2d 677, 681-82 (S.D. Ohio 2003) (stating "[i]n the Sixth Circuit, if a claimant moves to proceed *in forma pauperis,* the statute of limitations for filing a claim under Title VII is equitably tolled during the pendency of the plaintiff's motion." (quoting *Truitt v. County of Wayne*, 148 F.3d at 647-48 (6th Cir. 1998)). It follows that Plaintiff filed his Complaint here before his statute of limitations expired. Accordingly, this Court finds Defendants' statute-of-limitations argument not well taken.

   **B. Eighth Amendment**

Defendants next argue in their motion that the Eighth Amendment does not apply to pre-trial detainees. (Doc. # 8, at 3.)  To support this proposition, Defendants cite *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239 (1983), which states that "[b]ecause there had been no formal adjudication of guilt against [the defendant] at the time he required medical care, the Eighth Amendment has no application." *Id*. at 244. Defendants additionally rely on *Roberts v. City of Troy*, 773 F .2d 720 (6th Cir. 1985), which affirmed that pretrial detainees are not within the protection of the Eighth Amendment. *Id*. at 723. *Roberts* also noted, however, that "the eighth

7

amendment rights of prisoners are analogized to those of detainees under the fourteenth amendment, to avoid the anomaly of extending greater constitutional protection to a convict than to one awaiting trial." *Id*.

Although Plaintiff alleges that his Eighth Amendment rights were violated, he makes this conclusion after stating that the use of force during his arrest was excessive. Thus, regardless of whether Plaintiff has correctly identified the specific source of his constitutional protections, he has implicated a constitutional prohibition to excessive force because "[i]f the plaintiff was a free person at the time of the incident and the use of force occurred in the course of an arrest or other seizure of the plaintiff, the plaintiff's claim arises under the Fourth Amendment and its reasonableness standard." *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002) (citing *Graham v. Connor*, 490 U.S. 386, 395 (2002)). Because the Fourth Amendment applies to protect a suspect during arrest, the officers' actions are subject to the reasonableness standard. *See id*. at 302. Plaintiff's excessive force allegations thus describe a potential Fourth Amendment claim that is actionable under § 1983. *See Burr v. Burns*, NO. C2-04-1118, 2005 WL 1969532, at *6 (S.D. Ohio Aug. 12, 2005) ("Because the alleged use of force occurred during the course of Plaintiff's arrest, the claim must be judged under Fourth or Fourteenth Amendments, rather than Eighth Amendment, standards").

Because Plaintiff has alleged facts that could support a Fourth Amendment violation, and because the Court must construe his Complaint under a less-stringent standard, the Court concludes that Plaintiff does in fact assert a constitutionally-based cause of action when he alleges excessive force in his pleading. Thus, although Defendants are correct in stating that the

8

Eighth Amendment is inapplicable in the current case, such a conclusion does not prove dispositive of this particular case given the breadth of the Complaint.

This Court finds that, to the extent that Plaintiff asserts an Eighth Amendment excessive force claim, such a claim is improper. *See Bass v. Robinson*, 167 F.3d 1041, 1048-49 (6th Cir. 1999) (holding that Eighth Amendment did not govern claim for alleged excessive force used during pre-conviction arrest); *Davenport v. Simmons*, 192 F. Supp. 2d 812, 821 (W.D. Tenn. 2001) (same). Because Plaintiff inartfully pleads an excessive force claim governed by the Fourth Amendment, however, Defendants' second argument fails to present grounds meriting judgment in favor of Defendants on the entirety of Plaintiff's § 1983 claim. *See Glisson v. Sangamon County Sheriff's Dep't*, 408 F. Supp. 2d 609, 625 (C.D. Ill. 2006) (holding that incorrectly identifying the Eight Amendment for excessive force/arrest claim that falls under the Fourth Amendment does not warrant dismissal of a § 1983 claim). Although the Court **GRANTS** the motion for judgment on the pleadings in regard to that aspect of Plaintiff's § 1983 claim predicated on the Eighth Amendment, the Court **DENIES** the motion in regard to that portion of Plaintiff's § 1983 claim related to the Fourth Amendment. *See Fullard v. City of Philadelphia*, No. CIV. A. 95-4949, 1996 WL 195388, at *6 (E.D. Pa. April 22, 1996) (granting summary judgment for excessive force claims based on arrest asserted under Eighth Amendment while analyzing claims under Fourth Amendment).

**C. Police Department**

Defendants' third argument is that "the Zanseville Police Department should be granted judgment on the pleadings on all claims asserted against it by Plaintiff." (Doc. # 8, at 4.) They

reason that the police department is a sub-unit of the City and therefore can neither sue nor be sued.  To support this contention, Defendants rely on *Williams v. Dayton Police Department*, 680 F. Supp. 2d 1075, 1080 (S.D. Ohio 1987), which held that the police department was not *sui juris*.  *See also Greenlee v. City of Cleveland*, No. 1:03 CV 2410, 2005 WL 2249920 (N.D. Ohio Sept. 15, 2005).

The caption to Plaintiff's Complaint reads "Tracy Todd vs. Zanesville Police Department (employees)" and lists each officer individually and with his official title. (Doc. # 3, at 1.)  The pleading also references suing "every Defendant in his/her official capacity."  (Doc. # 3, at 6.)  To the Court's surprise, then, Plaintiff now adamantly denies including the police department as a defendant.  (Doc. # 9, 11.)  Thus, contrary to Plaintiff's prayer naming the officers in their official capacities, it appears that Plaintiff never intended to include the department as a defendant when he sued the officers in their "official and individual capacities."  (Doc. # 11, at 6.)  Plaintiff has repeatedly indicated in filings subsequent to his Complaint that he intended to sue the officers in their individual capacities as well as official capacities, but he specifically and repeatedly denies asserting a claim against the actual police department.  *See* Doc. # 11, at 1 ("At this stage of the proceedings, Plaintiff asserts and has asserted that he is not suing the Zanesville Police Department"); Doc. # 11, at 6 ("As cited, Plaintiff is not suing the 'Zanesvill[e] Police Department' but individuals in their official and individual capacity"); Doc. # 9, at 2 ("I am not suing the Zanesville Police Department, nor have I ever alleged that it is a person").  Instead, Plaintiff's often confusing filings indicate that he may later seek to add the police department only if and when he uncovers evidence of a policy behind the conduct of which he complains. Accordingly, it appears that despite the caption of this case and despite some of the contradictory

wording of Plaintiff's statements, he has not asserted any claim against the City of Zanesville Police Department. Accepting Plaintiff's debatable characterization of his own pleading, the Court therefore concludes that Defendants' third argument is moot. The Clerk should correct the docket to reflect that Plaintiff has not asserted a cause of action against or named as a party to this litigation the police department.

### D. Punitive Damages

In his Complaint, Plaintiff states that he is "suing each and every Defendant in his/her individual capacity for punitive damages in the amount of $750,000." (Doc. # 3, at 5.) Defendants assert that Ohio law precludes punitive damages awards against a city or its employees, citing Ohio Revised Code Section 2744.05. That statute states:

> [n]otwithstanding any other provisions of the Revised Code or rules of a court to the contrary, in an action against a political subdivision to recover damages for injury, death, or loss to person or property caused by an act or omission in connection with a governmental or proprietary function:
> (A) Punitive or exemplary damages shall not be awarded.

Ohio Rev. Code § 2744.05. Defendants are correct when they state that a municipality is not subject to punitive damages under § 1983. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("a municipality is immune from punitive damages under 42 U.S.C. § 1983"). But this aspect of Defendants' argument is moot because, as noted, no municipality is a party to this litigation.

This leaves the individual officers. It is well settled that a plaintiff can recover punitive damages against an individual in a § 1983 action. *See Payne v. Worthington Schools*, No. C2-99-830, 2001 WL 506509, at *16 (S.D. Ohio 2001); *Wille v. City of Moraine*, No. C3-94-443,

11

1996 WL 1061506, at *29 (S.D. Ohio Jan. 2, 1996). Thus, because there is the potential for a punitive damages award against the named Defendants, Defendants' fourth argument is not well-taken.

### III. Plaintiff's Motion for Summary Judgment/Motion to Strike

Plaintiff has filed a combined motion for summary judgment/motion to strike Defendants' Answer. (Doc. # 9.) Considering the latter prong of Plaintiff's motion first, the Court notes that Plaintiff seeks to strike Defendants' Answer on the grounds that Defendants admitted to an Eighth Amendment violation, as well as his assertion that Defendants' pleading is "vague, specious, and conclusiory [*sic*] and non-sequitur to the Plaintiff's Complaint." (Doc. # 9, at 1.) As noted above in addressing Plaintiff's response to the Rule 12(c) motion, Defendants did not in fact admit to an Eighth Amendment violation; rather, they only admitted to the existence of the Eighth Amendment to the United States Constitution and to various facts that may or may not ultimately amount to unconstitutional conduct. Plaintiff offers no further argument as to why Defendants' Answer should be stricken. Nor does Plaintiff respond to Defendants' correct contention that his motion to strike is untimely. Rule 12(f) requires a party to file a post-pleading motion to strike "within 20 days after the service of the pleading upon the party." Fed. R. Civ. P. 12(f). Defendants filed their Answer on December 28, 2005. (Doc. # 7.) Because Plaintiff waited until January 23, 2006 to file his motion to strike–beyond the period set forth in the rule–this Court **DENIES** Plaintiff's untimely motion to strike. (Doc. # 9.)

This leaves the remaining portion of Plaintiff's January 23, 2006 filing, the motion for summary judgment. Summary judgment is appropriate on § 1983 claims "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Products, Inc., v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id*. (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

In his motion for summary judgment, Plaintiff argues (1) that a magistrate judge has determined that his Complaint states a claim for relief, (2) that his claim was not time-barred, and (3) that Defendants are not immune to suit. (Doc. # 9, at 2.) The Court has already resolved the potential validity of this actions, but based on a different reason than that contained in the

13

first point.  The Court notes that the Magistrate Judge has not passed judgment on the ultimate validity of Plaintiff's § 1983 action.

The Court has also noted that Plaintiff's contention that Defendants have admitted an Eighth Amendment violation is an incorrect interpretation of Defendants' pleading, where they admitted to various facts and *the existence of* the Eighth Amendment, not a violation thereof. (Doc. # 7, at 1 ¶ 2.)  Plaintiff's second argument is therefore equally without merit.

Finally, Plaintiff's conclusory assertion regarding the potential application of immunity fails to persuade this Court that he warrants summary judgment in his favor.

The granting of a motion for summary judgment depends on the non-existence of any material fact. Fed. R. Civ. P. 56(c). In this case, there does not appear to be any serious dispute as to any material facts.  Both parties agree that the officers exercised force during Plaintiff's arrest. The only actual disputes are whether the officers used excessive force and whether they are immune from suit.

Plaintiff presents no summary judgment evidence.  Instead, he cites "*Monell v. Department of Social Services*, 93 S.Ct." to support his claim that "Defendants are not immune by reason of their good faith." (Doc. # 9, at 2.)  The Supreme Court in *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 692 (1978), indicated that absolute immunity did not apply to government agencies (more specifically municipalities) if the agency or department policy constituted a constitutional tort.  *Id.* at 658.  Defendants in this case are not asserting absolute immunity.  Also, department policy is not at issue in the present matter because, as explained above, Plaintiff is pursuing claims only against Defendants in their individual

14

capacities.  Therefore, the necessary determination involves *qualified immunity*, which depends on whether the exerted force was unreasonable under the circumstances.

In their memorandum in opposition, Defendants argue that, given the only evidence before the Court, Plaintiff cannot obtain summary judgment foreclosing their entitlement to immunity.  The Court agrees.

In their Answer, Defendants assert the defense of qualified immunity.  (Doc. # 7, at 2 ¶ 4.)  The qualified immunity doctrine, under certain circumstances, operates to shield from civil liability governmental officials who are performing official duties.  *Sinick v. County of Summit*, 76 Fed. Appx. 675, 678-79 (6th Cir. 2003).  This affirmative defense is meant to safeguard an official's proper decision making process and offers that party potential relief from frivolous suits.  *See D'Agastino v. City of Warren*, 75 Fed. Appx. 990, 993 (6th Cir. 2003).  The Sixth Circuit has explained that qualified immunity "shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  In addition to shielding officials from liability, qualified immunity may entitle the official to not stand trial or face the other burdens of litigation.  *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  This principal directs courts to make a ruling on the issue of qualified immunity early in the proceedings, so that the costs and expenses of trial are avoided where the defense is dispositive. *Id.*

The Supreme Court has instructed lower courts to use a distinct analysis to determine whether the application of qualified immunity is warranted.  In addressing the potential applicability of qualified immunity, a court follows a sequential inquiry: "First, the court considers whether, on the plaintiff's facts, there has there been a violation.  Second, the court considers whether that violation involved 'clearly established constitutional rights of which a reasonable person would have known.' "  *Hoover v. Radabaugh*, 307 F. 3d 460, 465 (6th Cir. 2002) (quoting *Dickerson v. McClelland*, 101 F. 3d 1151, 1158 (6th Cir. 1996)).  *See also Saucier*, 533 U.S. at 201.  This analytic approach has also been characterized as a three-part inquiry in which a court must ask:

> 1) has a constitutional violation occurred; 2) was that right a clearly established right of which a reasonable person would have known; and 3) has the plaintiff alleged sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights"?

*Id*. at 679 (quoting *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)).  *See also Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991) ("A public official is entitled to qualified immunity for conduct in performing discretionary functions so long as that conduct does not violate clearly established statutory or constitutional rights of which a reasonable officer would have known").

The doctrine of qualified immunity thus recognizes that an officer can be found to have violated the constitution, but be granted immunity for *reasonable* mistakes as to the legality of his or her action. *Saucier*, 533 U.S. at 206.  The reasonableness of such mistakes is inherently dependant upon the clarity of the legal constraints governing particular police conduct.  The contours of the right must be sufficiently clear that a reasonable official would understand that

what he is doing violates that right. *Id*. at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

In determining whether a defendant is entitled to qualified immunity, "[t]he ultimate burden of proof is on [the plaintiff] to show that [the defendants] are not entitled to qualified immunity." *Wegener*, 933 F.2d at 392. *See also Russo v. City of Cincinnati*, 953 F.2d 1036, 1043 (6th Cir. 1992). Further, "[w]hen ruling on qualified immunity, the district court should indicate the clearly established right at issue and the factual basis for its conclusion that a genuine issue exists as to the commission of acts violating that right." *Wegener*, 933 F.2d at 392 (citing *Poe v. Haydon,* 853 F.2d 418, 423-24, 426 (1988)).

The Court will begin its analysis by examining whether a constitutional violation has occurred. The right at issue in this case involves the clearly established Fourth Amendment guarantee against unreasonable searches and seizures. Thus, because the Fourth Amendment applies, this Court must determine whether the officers' actions were reasonable in light of the facts alleged. Prior to the events as alleged in Plaintiff's Complaint, the United States Supreme Court established that the use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). It was settled that at the time of the underlying events here that the use of force must be reasonable; if no force was required, then no force was necessary. *See id*. at 394; *Monday v. Oullette*, 118 F.3d 375, 384-85 (6th Cir. 1997).

Plaintiff alleges that Defendants violated this right because he sustained physical injuries as a result of the force used in the arrest. In an affidavit submitted with Defendants'

memorandum in opposition, Defendant William A. Shaw states that during his arrest, Plaintiff fled the scene, refused to put his hands behind his back, struggled during the attempt to subdue him, and actively fought with the officers. (Doc. # 15, Ex. A, Shaw Aff., at 1-2.) Shaw further states that he used his Taser until Plaintiff was subdued and handcuffed and that neither he nor the other officers used "any more force than was necessary to arrest Todd and protect each officer present." (Doc. # 15, Ex. A, Shaw Aff., at 2 ¶ 12.)

A great deal of discretion is afforded police officers when evaluating reasonableness in such situations so that "[i]f the officer's mistake as to what the law requires is reasonable . . .[he] is entitled to the immunity defense." *Magrum v. Meinke*, 332 F. Supp. 2d 1071, 1078 (N.D. Ohio 2004). *See also Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002) ("A police officer may be entitled to qualified immunity, obviously, even though he has in fact violated the plaintiff's rights; 'reasonable mistakes can be made as to the legal constraints on particular police conduct.'" (citations omitted)).

Accordingly, to determine whether the officers are entitled to qualified immunity, this Court must determine whether their conduct was reasonable. Courts have indicated the difficulty of this determination, stating that

> ascertaining the reasonableness of force used is not capable of precise definition or mechanical application, [and] the analysis focuses on the specific facts of each case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight."

*Magrum*, 332 F. Supp. 2d at 1078 (quoting *Graham*, 490 U.S. at 396). The *Magrum* court goes on to state that "[t]he 'reasonableness' of a particular use of force must be judged from the

18

perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Magrum*, 332 F. Supp. 2d at 1078.

Thus, a determination of whether the force used to effect a seizure was unreasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Ewolski v. City of Brunswick*, 287 F.3d 492, 507-08 (6th Cir. 2002) (citing *Graham*, 490 U.S. at 396). *See also D'Agastino*, 75 Fed. Appx. at 994. The "objective reasonableness standard" applied in this inquiry asks whether a reasonable officer would conclude that the level of force used was appropriate. *Graham*, 490 U.S. at 396-97. This standard balances the cost to the individual against the government's interest in effectuating a seizure; it contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case. *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002) (citing *Graham*, 490 U.S. at 396 ). The officer's subjective intentions are irrelevant to a Fourth Amendment inquiry. *Graham*, 490 U.S. at 397. Generally, the use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness. *Id.*

There is no dispute that Defendants applied force in arresting Plaintiff. The only evidence before this Court as to the need for and extent of that force are contained in the Shaw affidavit. This evidence does not indicate that it would have been clear to a reasonable officer facing the specific factual situations before Defendants that the force involved in effectuating the arrest of Plaintiff was excessive. *See D'Agastino*, 75 Fed. Appx. at 994. The evidence thus does not indicate that Defendants acted unreasonably under the circumstances so as to entitle Plaintiff

to summary judgment that Defendants are not entitled to qualified immunity. Consequently, this Court **DENIES** Plaintiff's motion for summary judgment. (Doc. # 9.)

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion for judgment on the pleadings (Doc. # 8), **DENIES** Plaintiff's motion to strike the Rule 12(c) motion (Doc. # 11), **DENIES** Plaintiff's motion for summary judgment (Doc. # 9), and **DENIES** Plaintiff's motion to strike Defendants' Answer (Doc. # 9). Plaintiff has failed to assert a proper excessive force claim under the Eighth Amendment, but has asserted a § 1983 excessive force claim under the Fourth Amendment. Additionally, the Court **ORDERS** that the Clerk shall correct the docket to reflect that Plaintiff has neither named nor asserted a cause of action against the City of Zanesville Police Department. The case shall proceed against the named Defendants on the remaining grounds asserted in the Complaint.

**IT IS SO ORDERED**.

/s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE