UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**TRACY TODD,**

      **Plaintiff,**        Case No. 2:05-cv-1076
                                                   JUDGE GREGORY L. FROST
      **v.**                                   Magistrate Judge Mark R. Abel

**PATROLMAN MOORE, et al.,**

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court for consideration of Defendants' Motion for Summary Judgment (Doc. # 50), Plaintiff's memorandum in opposition (Doc. # 55), and Defendants' reply memorandum (Doc. # 59). For the reasons that follow, the Court finds Defendants' motion for summary judgment well taken but denies various related motions filed by Plaintiff.

### I. Background

Defendants Patrolman Gary Moore, Sergeant Christopher Rice, Patrolman Jeremy Barnhart, Detective Mark Lenhart, Lieutenant William Shaw, Patrolman Sean Beck, and Patrolman Christopher Phipps were all police officers with the City of Zanesville on November 23, 2003, when Plaintiff, Tracy Todd, was the subject of a Delaware County arrest warrant. While in Zanesville, Rice had identified Todd as the target of the warrant and informed Moore of the sighting. They returned to the house where Rice had seen Todd, accompanied by other officers. Todd fled from the house's porch, but was apprehended approximately fifty yards away. He resisted arrest, and during the struggle Todd was struck one or more times in the

brachial plexus area in an attempt to numb his arm so that Todd could be handcuffed. Todd continued to resist against multiple officers, despite being repeatedly told to place his hands behind his back. Shaw used a Taser on Todd's neck/shoulder area three times, and Todd was subdued and handcuffed.

Todd subsequently initiated the instant action under 42 U.S.C. § 1983, alleging excessive force and that he incurred injuries requiring medical care. (Doc. # 3.) Defendants filed an Answer (Doc. # 7) and then moved for judgment on the pleadings (Doc. # 8). Todd in turn moved for summary judgment (Doc. # 9). The Court issued an April 19, 2006 Opinion and Order (Doc. # 19, with correction in Doc. # 21) in which the Court granted in part and denied in part Defendants' motion for judgment on the pleadings (Doc. # 8) and denied Todd's motion for summary judgment (Doc. # 9). The Court concluded that although Todd had failed to assert a proper excessive force claim under the Eighth Amendment, he has asserted a § 1983 excessive force claim under the Fourth Amendment.

Defendants have now moved for summary judgment on this excessive force claim. (Doc. # 50.) The parties have completed briefing the issues involved, and the motion is now ripe for disposition.

## II. Discussion

**A. Standard Involved**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law." Fed. R. Civ. P. 56(c). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Products, Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

**B. Analysis**

As noted, Defendants move for summary judgment on Todd's 42 U.S.C. § 1983 claims. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

3

42 U.S.C. § 1983.  Thus, in order to assert valid § 1983 claim, Todd must show that, while acting under color of state law, Defendants deprived him of a right secured by the Federal Constitution or laws of the United States.  *See Alkire v. Irving,* 330 F.3d 802, 813 (6th Cir. 2003).

The parties agree that the officers exercised force during Todd's arrest. The only actual dispute, then, is whether the officers used excessive force so as to preclude the application of qualified immunity here.

As the Court explained in its prior Opinion and Order (Doc. # 19),[1] the qualified immunity doctrine, under certain circumstances, operates to shield from civil liability governmental officials who are performing official duties.  *Sinick v. County of Summit*, 76 F. App'x 675, 678-79 (6th Cir. 2003).  This affirmative defense is meant to safeguard an official's proper decision making process and offers that party potential relief from frivolous suits.  *See D'Agastino v. City of Warren*, 75 F. App'x 990, 993 (6th Cir. 2003).  The Sixth Circuit has explained that qualified immunity "shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Id*. (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  In addition to shielding officials from liability, qualified immunity may entitle the official to not stand trial or face the other burdens of litigation.  *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  This principal directs

---

[1] The Court recognizes that much of the qualified immunity discussion presented here necessarily repeats its earlier discussion of the doctrine.  The Court also notes that Defendants' motion often copies the Court's previous language with only select word alterations.

courts to make a ruling on the issue of qualified immunity early in the proceedings, so that the costs and expenses of trial are avoided where the defense is dispositive. *Id.*

The Supreme Court has instructed lower courts to use a distinct analysis to determine whether the application of qualified immunity is warranted. In addressing the potential applicability of qualified immunity, a court follows a sequential inquiry: "First, the court considers whether, on the plaintiff's facts, there has there been a violation. Second, the court considers whether that violation involved 'clearly established constitutional rights of which a reasonable person would have known.' " *Hoover v. Radabaugh*, 307 F.3d 460, 465 (6th Cir. 2002) (quoting *Dickerson v. McClelland*, 101 F.3d 1151, 1158 (6th Cir. 1996)). *See also Saucier*, 533 U.S. at 201. This analytic approach has also been characterized as a three-part inquiry in which a court must ask:

> 1) has a constitutional violation occurred; 2) was that right a clearly established right of which a reasonable person would have known; and 3) has the plaintiff alleged sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights"?

*Id*. at 679 (quoting *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)). *See also Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991) ("A public official is entitled to qualified immunity for conduct in performing discretionary functions so long as that conduct does not violate clearly established statutory or constitutional rights of which a reasonable officer would have known").

The doctrine of qualified immunity thus recognizes that an officer can be found to have violated the constitution, but be granted immunity for *reasonable* mistakes as to the legality of his or her action. *Saucier*, 533 U.S. at 206. The reasonableness of such mistakes is inherently

dependant upon the clarity of the legal constraints governing particular police conduct. The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Id*. at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

In determining whether a defendant is entitled to qualified immunity, "[t]he ultimate burden of proof is on [the plaintiff] to show that [the defendants] are not entitled to qualified immunity." *Wegener*, 933 F.2d at 392. *See also Russo v. City of Cincinnati*, 953 F.2d 1036, 1043 (6th Cir. 1992). Further, "[w]hen ruling on qualified immunity, the district court should indicate the clearly established right at issue and the factual basis for its conclusion that a genuine issue exists as to the commission of acts violating that right." *Wegener*, 933 F.2d at 392 (citing *Poe v. Haydon,* 853 F.2d 418, 423-24, 426 (6th Cir. 1988)).

The Court will begin its analysis by examining whether a constitutional violation has occurred. The right at issue in this case involves the clearly established Fourth Amendment guarantee against unreasonable searches and seizures. Because the Fourth Amendment applies, this Court must determine whether Defendants' actions were reasonable in light of the facts alleged. Prior to the events as alleged in Todd's Complaint, the United States Supreme Court established that the use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). It was settled that at the time of the underlying events here that the use of force must be reasonable; if no force was required, then no force was necessary. *See id*. at 394; *Monday v. Oullette*, 118 F.3d 1099, 1104 (6th Cir. 1997) (citing *Adams v. Metiva*, 31 F.3d 375, 384-85 (6th Cir. 1994)).

Todd alleges that Defendants violated this right because he sustained physical injuries as a result of the force used in the arrest. In an affidavit re-submitted with Defendants' motion for summary judgment, Shaw states that during the arrest, Todd fled the scene, refused to put his hands behind his back, struggled during the attempt to subdue him, and actively fought with the officers. (Doc. # 50, Ex. A, at 1-2 ¶¶ 5-11.) Shaw further states that he used his Taser until Todd was subdued and handcuffed and that neither he nor the other officers "use[d] any more force than was necessary to arrest Todd and protect each officer present." (Doc. # 50, Ex. A, at 2 ¶ 12.)

A great deal of discretion is afforded police officers when evaluating reasonableness in such situations so that "[i]f the officer's mistake as to what the law requires is reasonable . . .[he] is entitled to the immunity defense." *Magrum v. Meinke*, 332 F. Supp. 2d 1071, 1078 (N.D. Ohio 2004). *See also Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002) ("A police officer may be entitled to qualified immunity, obviously, even though he has in fact violated the plaintiff's rights; 'reasonable mistakes can be made as to the legal constraints on particular police conduct.'" (citations omitted)).

Accordingly, to determine whether Defendants are entitled to qualified immunity, this Court must determine whether their conduct was reasonable. Courts have indicated the difficulty of this determination, stating that

> ascertaining the reasonableness of force used is not capable of precise definition or mechanical application, [and] the analysis focuses on the specific facts of each case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight."

*Magrum*, 332 F. Supp. 2d at 1078 (quoting *Graham*, 490 U.S. at 396). The *Magrum* court goes on to state that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Magrum*, 332 F. Supp. 2d at 1078.

Thus, a determination of whether the force used to effect a seizure was unreasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Ewolski v. City of Brunswick*, 287 F.3d 492, 507-08 (6th Cir. 2002) (citing *Graham*, 490 U.S. at 396). *See also D'Agastino*, 75 F. App'x at 994. The "objective reasonableness standard" applied in this inquiry asks whether a reasonable officer would conclude that the level of force used was appropriate. *Graham*, 490 U.S. at 396-97. This standard balances the cost to the individual against the government's interest in effectuating a seizure; it contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case. *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002) (citing *Graham*, 490 U.S. at 396 ). The officer's subjective intentions are irrelevant to a Fourth Amendment inquiry. *Graham*, 490 U.S. at 397. Generally, the use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness. *Id.*

There is no dispute that Defendants applied force in arresting Todd. But the evidence before this Court as to the need for and extent of that force does not present circumstances in which a reasonable juror could conclude that the force was applied in an objectively unreasonable manner or to an objectively unreasonable degree. Shaw states in his affidavit that

8

he used his Taser for three periods of five seconds each until Todd ceased fighting the officers and was subdued. (Doc. # 50, Ex. A.) The affidavits of Barnhart (Doc. # 50, Ex. C) and Moore (Doc. # 50, Ex. E) echo this account.[2]

It is axiomatic that officers are permitted to use a measure amount of force to protect themselves against a defendant who is resisting arrest through physical confrontation. The foregoing evidence therefore does not indicate that it would have been clear to a reasonable officer facing the specific factual situation before Defendants that the force involved in protecting themselves and in effectuating the arrest of Todd was excessive. *See D'Agastino*, 75 F. App'x at 994. And Todd has failed to point to contrary evidence creating disputes over *material* facts or suggesting objectively unreasonable conduct in light of his clearly established

---

[2] Two comments are necessary in regard to the remaining affidavits Defendants submitted. First, the Lenhart affidavit removes that officer from the arrest and precludes his liability here. Lenhart states in his affidavit that he was not involved in Todd's arrest, was not present at the time of the arrest, and did not even have contact with Todd until the following day at the police department. (Doc. # 50, Ex. B.) This unchallenged evidence renders an excessive force claim against Lenhart wholly invalid.

Second, the remaining three submitted affidavits are not worthy of this Court's consideration. The original Beck and Phipps "affidavits" (Doc. # 50, Ex. D, Ex. F) submitted with their motion are neither signed by the affiant nor notarized. The original Rice "affidavit" (Doc. # 50, Ex. G) is signed by Rice but lacks notarization; it also lacks the "under penalty of perjury" characteristics to suffice as a declaration. Weeks later, Defendants submitted untimely signed and notarized versions of these three documents (Doc. # 54), but they did not obtain leave of Court to do so. The Rice affidavit is also curiously notarized; the document inexplicably bears *two* dates of notarization, and it appears that it bears the affiant's signature from the first date. If the foregoing is indeed the case, it is unclear to this Court how and why the notary signed this document. In any event, because these submissions were not filed as required *concurrent to* the motion to suppress and were not filed pursuant to Court permission, the Court **STRIKES** the affidavits as impermissible summary judgment evidence. The Court recognizes that its declining to consider this material is of no ultimate effect on today's decision, however, because the remaining proper evidence before the Court supports the application of qualified immunity to these officers.

9

constitutional right. Although Todd has submitted an affidavit under Fed. R. Civ. P. 56(f), he fails to identify what evidence he can produce that will create a genuine issue of material fact regarding his excessive force claim;[3] much of his affidavit focuses on potential evidence that he believes would support a *Monell* claim against the City of Zanesville and complaints he has against former counsel. (Doc # 56.) Citing hearsay, Todd does assert that there is a witness who could confirm his allegation of excessive force, but although he asserts prior counsel failed to provide him with a copy of her statement, he fails to explain why he could not contact the potential witness directly. Instead, he cites his lack of an investigator as the cause of his problem, but there is no right to a court-appointed investigator in a civil case such as this litigation. Todd's Rule 56(f) affidavit therefore fails to present cause for delaying consideration of the summary judgment motion.

---

[3] Like other documents he has filed, Todd's October 4, 2006 "Motion of Responce [*sic*] to Defendants['] Motion for Summary Judgment" contains numerous factual allegations, but these assertions are contained in his argument only and not in an affidavit or declaration or other proper summary judgment evidence under Rule 56. (Doc. # 55.) The Court has nonetheless considered the factual allegations carefully, because Todd did have the entire filing notarized and the Court is uncertain whether he intended it to serve as an affidavit–one of two he would have therefore filed that day, without filing a memorandum in opposition. There remains no dispute of material fact in regard to the excessive force claim (and much of the filing targets causes of action not asserted in this case, such as argument over a purported deliberate indifference to Todd's medical needs and what appears to be a conspiracy argument). In any event, both October 4, 2006 filings (Docs. # 55, 56) follow his September 6, 2006 filing (Doc. # 52)–a memorandum in opposition labeled a "Motion to Deny Qualified Immunity to Defendants"–and, like his October 31, 2006 "reply memorandum" that is actually a sur-reply, these filings are therefore not properly before this Court. This District's Local Civil Rules permit the filing of a motion and memorandum in support, a memorandum in opposition, and a reply memorandum. S.D. Ohio Civ. R. 7.2(a)(1), (2). Rule 7.2(a)(2) states that "[n]o additional memoranda beyond those enumerated will be permitted except upon leave of court for good cause shown." To the extent that Todd has attempted to evade this rule by filing various memoranda as "motions," they are not properly before the Court. To the extent that Todd has in good faith filed these documents as motions, they are not well taken for the reasons expressed herein.

The evidence thus does not indicate that Defendants acted unreasonably under the circumstances so as to preclude their invocation of qualified immunity. There has been no constitutional infraction here so as to create official capacity or individual capacity liability. Consequently, this Court finds Defendants' motion for summary judgment well taken.[4] (Doc. # 50.)

### III. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. # 50), **DENIES** Todd's Rule 56(f) motion to the extent he has made such a motion (Doc. # 56), and **DENIES** Todd's remaining various motions (Docs. # 52, 60, 62). The Clerk is instructed to enter judgment accordingly.

**IT IS SO ORDERED**.

/s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE

---

[4] The Court therefore **DENIES** Todd's motion for leave to file an amended complaint; because there is no underlying constitutional deprivation, there can be no viable *Monell* claim. (Doc. # 62.) The Court also **DENIES** Todd's objection to the Magistrate's decision. (Doc. # 60.)